UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KIMBERLEE K. BANNING | CIVIL ACTION |
| VERSUS | NO: 14-990 |
| DUFRENE BOATS, INC., ET AL. | SECTION: "A" (4) |

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 14) and Motion to Strike (Rec. Doc. 17)** filed by defendant Marquette Transportation Co. Gulf-Inland, LLC; **Motion to Extend Export Report Deadline (Rec. Doc. 22)** filed by plaintiff Kimberlee K. Banning. All motions are opposed. The motions, noticed for submission on March 25, 2015, April 8, 2015, and April 22, 2015, are before the Court on the briefs without oral argument.

**I.      BACKGROUND**

On May 28, 2013, at approximately 6:22 p.m., plaintiff Kimberlee Banning was driving her jet ski northbound in the Intracoastal Waterway ("ICW") near Lafitte, Louisiana. (Rec. Doc. 14-6, UMF no. 1). The M/V CHELSEY E along with her tow of two barges was moored to the west bank of the ICW. (*Id.* no 2). The flotilla was held in place by three separate mooring lines which ran from the port side of the vessel and barges to the west bank of the ICW. Banning approached the CHELSEY E from the stern, again heading northward in the channel, and attempted to navigate around the flotilla on the port side. Banning struck the mooring lines that ran from the CHELSEY E flotilla to the shore, and was ejected from her jet ski. Banning sustained extensive, serious personal injuries as a result of the incident. The CHELSEY E was owned by defendant Kirby Inland Marine. (*Id.*).

According to the Louisiana Department of Wildlife and Fisheries Boating Incident

1

Report, the distance between the port side of the CHELSEY E with tow and the west bank of the ICW was about 76 feet near the front of the first barge and about 109 feet near the second barge.[1] (Rec. Doc. 14-2, Diagram).

Although the distance across the ICW from bank to bank is estimated at about 410 feet, (*id.*), the full extent of the navigable waterway between the starboard side of the CHELSEY E and the east bank of the ICW was not available because the JOHN 3:16, a vessel owned and operated by defendant Marquette Transportation Company, was moored to the starboard side of the CHELSEY E and its barges. (*Id.*).

On the day of the accident there were significant delays at the Harvey locks for vessels waiting to enter the Mississippi River so the JOHN 3:16 was forced to moor in the ICW to wait its turn. (Rec. Doc. 14-6, UMF no. 3). The JOHN 3:16 had to wait more than 60 hours for passage into the river. (*Id.*). Marquette's crew moored the JOHN 3:16, along with its tow of two

---

[1] The Court uses this diagram from the incident report for demonstrative purposes only. (Rec. Doc. 14-2 at 6). No party should interpret the Court's use of the diagram and the information contained in the report narrative as an implicit determination of admissibility at trial.



barges, on the starboard side of the CHELSEY E such that the vessels were port to starboard and the JOHN 3:16 was positioned farthest from the west bank of the ICW. (*Id.*).

According to Marquette, there was nearly 200 feet of navigable area between the starboard side of the JOHN 3:16 and the east bank of the ICW but Banning disputes that assertion. (Rec. Doc. 16-11, Obj. to UMF no. 7). Banning's husband was riding his own jet ski at the time of the accident but he cleared the CHELSEY E and JOHN 3:16 without incident by navigating on the starboard side of the JOHN 3:16. Banning's blood was drawn and tested following the incident and according to the State Police Crime Lab report Banning's blood alcohol level exceeded the legal limit of impairment. (Rec. Doc. 14-5, Exh. D). Banning was ultimately cited for being at fault for the accident. (*Id.*).

This matter is scheduled to be tried to the bench on June 29, 2015. (Rec. Doc. 12).

Marquette now moves for summary judgment on the issue of liability. Marquette contends that there is no evidence to suggest that its crew played any part in mooring Kirby's CHELSEY E to the west bank of the ICW. Marquette argues that Banning cannot prove that any negligence on its part cause or contributed to her injuries.[2]

In opposition, Banning points out that the Kirby vessel was dangerously moored because the mooring lines were excessively long, unmarked, and barely visible. According to Banning, Marquette's injudicious decision to moor the JOHN 3:16 and its two barges alongside the CHELSEY E served to worsen an already dangerous situation because a large part of the navigable waterway was obstructed. Banning points out that the moor lines extending to the west bank served to moor both vessels, and by Marquette's own admission its vessel was

---

[2] Marquette devotes a significant amount of briefing to Banning's role in causing her own injuries. The Court is persuaded that Banning's percentage of fault cannot be determined on a summary judgment record but the Court finds it highly unlikely that Banning was 100 percent at fault for the accident. The determinative issue in whether Marquette is entitled to summary judgment is not whether Banning contributed to her own injuries but whether Marquette has demonstrated that it is entitled to judgment as a matter of law as to the issue of its own fault.

moored in position for about 60 hours. Finally, Banning argues that Marquette's motion is premature in light of discovery delays in this matter.

## II. LAW AND ANALYSIS

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (*citing Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (*citing* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (*citing SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

Maritime law governs Banning's claims against defendants. To establish a claim for negligence under maritime law, the plaintiff must prove that there was a duty owed by the defendant to the plaintiff, the defendant breached that duty, the plaintiff sustained injury, and that the defendant's conduct was a cause of the plaintiff's injury. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000)). Under maritime law, a plaintiff is owed a duty

of ordinary care under the circumstances. *Id.* (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). The determination of the existence and scope of a duty involves several factors, "most notably the foreseeability of the harm suffered by the complaining party." *Id.* (quoting *Consol. Alum. Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987)).

The Court understands that thus far Banning has discovered no evidence suggesting that Marquette was involved in placing the mooring lines that ran from the CHELSEY E to the shore. Discovery is apparently not complete at this time but the Court suspects that Marquette had no role in mooring the CHELSEY E. Nonetheless, if the mooring lines that Kirby's employees placed did present a hazard to navigation—either because they were not marked, excessively long thereby giving the false impression that the vessels were in motion and not moored, or poorly visible to other vessels in navigation—Marquette's vessel was positioned next to the CHELSEY E for 60 hours during which time it reaped the benefits of the Kirby mooring lines while perhaps ignoring a potential hazard that should have been obvious to the crew. Banning's position is that the JOHN 3:16 compounded the already dangerous situation by obstructing even more of the waterway and Banning suggests that the diagram contained in the incident report does not accurately represent the extent to which the JOHN 3:16 was obstructing the ICW by essentially "double parking" next to the CHELSEY E.[3] The Court is persuaded that the true cause(s) of the accident cannot be determined on a summary judgment record and can only be sorted out by a trial on the merits. Marquette's motion for summary judgment is therefore DENIED.

Finally, Marquette's motion to strike Plaintiff's liability expert is DENIED and

---

[3] The Court notes that the diagram clearly states that it is not drawn to scale. See note 1, *supra*.

Banning's motion to extend the expert deadline is GRANTED. Plaintiff missed the expert deadline by only a few days and counsel for Plaintiff concedes that he erred in believing that all parties had informally agreed to an extension. (Rec. Doc. 22-1 at 4). This Court is persuaded that expert testimony might be helpful regarding the mooring in this case, particularly if the *Pennsylvania* rule is potentially triggered.[4] (Rec. Doc. 16, Plaintiff's Opposition at 5 n.15).

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 14) and Motion to Strike (Rec. Doc. 17)** filed by defendant Marquette Transportation Co. Gulf-Inland, LLC are **DENIED**;

**IT IS FURTHER ORDERED** that the **Motion to Extend Export Report Deadline (Rec. Doc. 22)** filed by plaintiff Kimberlee K. Banning is **GRANTED** as prayed for.

April 23, 2015

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[4] Under the *Pennsylvania* rule, a party in violation of a rule intended to prevent allisions is presumed to be at fault and bears the burden of proving that the violation did not cause the allision. *Trico Marine Assets, Inc. v. Diamond B Marine Servs., Inc.*, 332 F.3d 779, 786 (5th Cir. 2003) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 504 (5th Cir. 1994)).